IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT
OF MEMPHIS TENNESSEE WESTERN
DIVISION

Sharon Mourning**,**

    **Plaintiff**,

vs.

Downtown Memphis Commission, City of Memphis, Sgt. James Harden Badge 1635 in his official capacity as a Memphis Police Officer, and in his individual capacity**,**

    **Defendants.**

                                  **JURY TRIAL DEMANDED**

## COMPLAINT

Comes now Plaintiff, Sharon Mourning, and would show the following:

### INTRODUCTION

1. This action is brought pursuant to the laws in the State of Tennessee and under the United States Constitution.

2. This action is brought pursuant to: Title VII of the Civil Rights Act of 1964; Tennessee Human Rights Act; Wrongful Termination; and any other causes of action consistent with the facts alleged in this Complaint.

### PARTIES

3. Plaintiff, Sharon Mourning, is and at all times pertinent herein, has been, a resident citizen of Memphis, Shelby County, Tennessee.

4. Defendant, City of Memphis (Defendant City), is responsible for the administration and governance of the Memphis Police Department, and its officers.

5. Defendant Downtown Memphis Commission (Defendant DMC) works along

with Defendant City, in order to maintain a police presence, a safe environment for Defendant City, and to engage in conduct that increases the property values for Defendant City.

6. Defendant James Harden (Defendant Harden) is a Memphis Police Department Officer, who at all relevant times was employed by Defendant City.

7. The facts and occurrences hereinafter set forth took place in Memphis, Shelby County, Tennessee.

8. Venue is proper in this federal judicial district pursuant to 28 USC§ 1391 and 28 USC§ 1331.

## FACTS

9. Plaintiff, was hired by Defendant DMC on August 2, 2022 as a law enforcement employee to aid Defendant City.

10. While employed, Captain Reginal Scott informed Plaintiff, and several other employees, as to what houses they could look into in order to see different individuals when they were not aware that they were being watched.

11. He discussed how they could see "the finest white woman" in Memphis getting dressed, or having sex.

12. He also discussed how to see a male he described as having the biggest penis in Memphis getting dressed, and acknowledged that he watched these individuals and others often, as part of his "surveillance" of the area.

13. Plaintiff interpreted this conduct to be a serious invasion of privacy, and a violation of his duty.

14. Captain Reginal Scott also solicited naked photos of Plaintiff repeatedly, which Plaintiff refused.

15. Captain Reginal Scott would also grope Plaintiff in her private areas, against Plaintiff's wishes.

16. Plaintiff, feeling uncomfortable and fearful, ultimately reported the conduct to her superior, Captain Eleslie Walker.

17. After reporting the conduct, instead of being protected, Defendant DMC cut Plaintiff's hours, making it difficult for Plaintiff to provide a living for herself.

18. Plaintiff began feeling isolated, and intimidated based on this conduct.

19. Defendant DMC, through its superiors, continued to harass Plaintiff daily, and Captain Reginal Scott repeatedly tried to force Plaintiff as an "order," to meet him in parking areas and dark places where no one would be present but them.

20. Captain Reginal Scott would also reach out to Plaintiff privately by phone, in attempts to have sex with her.

21. Ultimately, after experiencing tremendous anxiety and repeated harassment, Plaintiff contacted Defendant City, through the Memphis Police Department, on or about December 27, 2022.

22. Plaintiff reported all of the conduct previously alleged in this Complaint and more to Defendant City, through the Memphis Police Department.

23. Defendant City informed Plaintiff that they would open an investigation with the sex crimes unit.

24. Defendant City informed Plaintiff that they would protect her, and do a thorough investigation to get to the bottom of everything.

25. However, Defendant City then went back to Captain Reginal Scott, and informed him that Plaintiff was attempting to file a report against him, and informed him of her allegations.

26. In response, Captain Reginal Scott informed Plaintiff that Defendant City informed him that she was attempting to report him, and he let her know that she needed to come see him immediately, and then gave her a location.

27. Then, on January 2, 2023, Captain Reginal Scott became frustrated that Plaintiff was avoiding his advances, and demanded that she meet up with him.

28. Plaintiff ultimately appeared, but ended up fleeing from him when he tried to become physically aggressive with her.

29. It was unclear what he planned on doing to Plaintiff, as Plaintiff fled from him as he chased her.

30. Captain Reginal Scott then terminated Plaintiff on January 2, 2023.

31. Plaintiff, in a hysterical state, then contacted Defendant DMC through its CEO, Paul Young.

32. Plaintiff informed Defendant DMC of everything that had occurred, and that was occurring.

33. Plaintiff also informed Defendant DMC through Paul Young that some of this conduct was captured on video footage in the area, and that she needed for him to save the footage.

34. Defendant DMC Paul Young agreed.

35. Defendant DMC, through Paul Young, informed Plaintiff that he was reinstating Plaintiff's employment, and said that he would do a thorough investigation and let her know the results.

36. Defendant DMC did not inform Plaintiff of the results of the investigation, but instead, discontinued the investigation as they started to learn information that corroborated what Plaintiff was saying.

37. Defendant DMC then allowed Captain Reginal Scott to resign, and did not discipline him for his conduct.

38. Defendant DMC then informed its employees not to assist Plaintiff if she asked them for help or information regarding her allegations, and that Plaintiff was involved in a lawsuit against Defendant DMC.

39. Defendant DMC also instructed its employees to report any conduct that Plaintiff engaged in, and video her, if she engaged in any conduct that could help them fight a lawsuit against her.

40. Defendant DMC instructed its employees to continue to follow this order until instructed otherwise by their attorney.

41. Defendant City, works with Defendant DMC in providing law enforcement services.

42. Defendant DMC employed Plaintiff to provide law enforcement services, in order to assist Defendant City.

43. When Plaintiff reported the conduct against her as described in this Complaint to Defendant City, Defendant City informed Plaintiff that the information would be provided to Sex Crimes for an investigation.

44. Then, shortly later, in January of 2023, Defendant received a call from Defendant Harden, informing her that he was with Sex Crimes, and that the report was being closed, as the conduct complained of did not rise to the level of a crime.

45. Scared and confused, Plaintiff called Defendant City, through Sex Crimes, who informed her that they were not aware of who she was, and that they did not receive any report regarding her.

46. Plaintiff then gave them the information of Defendant Harden, and Sex Crimes

confirmed that he was not with Sex Crimes.

47. Plaintiff then requested a copy of her report, but she was not allowed a copy of it.

48. Plaintiff was allowed to look at it briefly, however.

49. The report left out key information and allegations, and was not based on the information provided by Plaintiff.

50. The report failed to state how Plaintiff was sexually harassed, or how Defendant City reached out to Captain Reginal Scott to let him know about the allegations made by Plaintiff.

51. When Plaintiff complained to Defendant Harden regarding the report, Defendant Harden admitted key information was intentionally left out of the report, and was very dismissive to Plaintiff.

52. Defendant Harden and Defendant City attempted to intimidate Plaintiff, and get her to drop the allegations.

53. Plaintiff, instead went to Defendant City, through Internal Affairs, and made them aware of everything that was occurring.

54. In response, Defendant City, through Internal Affairs, did not discipline any of the employees, even after they were made aware of what was occurring.

55. Defendant City, through Internal Affairs, justified the conduct as proper policy, procedure, or custom, and informed Plaintiff that the most it would do is require Defendant Harden to issue another report.

56. However, to this date, that also has not occurred.

57. Defendants are attempting to harass, bully, and intimidate Plaintiff by operating as a united front, and by showing her that is not powerful enough to successfully confront them.

58. Plaintiff was harassed and discriminated against based on her sex.

59. Plaintiff was terminated based on her sex, and for reporting the misconduct that was occurring against her.

60. Plaintiff has been stressed, embarrassed, and has suffered lost wages as a result of Defendants' conduct.

61. Defendant City was required to engage in a reasonable investigation, and to take into account all relevant information available at the time of its interaction with its citizens and employees.

62. Defendant City failed to follow this procedure, and failed to provide any checks and balances to prevent Plaintiff from being violated.

63. Defendant City has a pattern, policy, or custom of allowing sexual assault victims to be neglected, and violated.

64. Defendant City has a very public history of neglecting sexual assault victims, and not testing rape kits, which has allowed for victims to be repeatedly violated in some cases.

65. Defendant City is aware that this is a problem but has declined to implement anything to afford its citizens any additional protections.

66. Defendant City, knowing what has occurred to Plaintiff, has not implemented anything to prevent this from occurring again.

67. Defendant City is not immune from its conduct, due to the negligence of its employees, or actors that it is responsible for.

68. Defendant DMC has allowed Plaintiff to be violated, and has allowed this conduct to occur, based on Plaintiff's sex.

69. Defendant DMC was fully aware of what Plaintiff had experienced, and has

elected not to protect Plaintiff so that it would not support her allegations in a lawsuit.

70. Defendant Harden acted consistently with Defendant City's policies, procedures, practices, and customs as it related to covering up Captain Reginal Scott's conduct, and Defendant DMC's conduct.

71. To the extent that this conduct was not consistent with Defendant City's policies, practices, procedures, and customs, then Defendant Harden has acted in his individual capacity when engaging in the detrimental conduct complained of.

72. Defendant City undertook a duty to protect Plaintiff and to do an investigation.

73. Defendant City did not take any reasonable steps to support Plaintiff's claims, even when it was provided with supporting evidence that was unrefuted.

74. Defendants have violated Plaintiff's constitutional rights.

75. Plaintiff is now currently employed with Defendant DMC, and experiencing daily harassment.

WHEREFORE, Plaintiff respectfully prays for:

 A. An award of $300,000 in compensatory damages and any other such relief as appropriate against Defendants.

 B. $300,000 in punitive damages against Defendants.

Respectfully Submitted,

s/ *Terrell Tooten*
Terrell Tooten, BPR No. 028506
Attorney for Plaintiff
5744 Rayben Circle,
Memphis, TN, 38115
901-609-3622 Telephone;
x99tooten@gmail.com